**ERWIN et al. v. OLSEN et al. \***
(No. 318-3657.)

(Commission of Appeals of Texas, Section B. May 24, 1922.)

1. **Mines and minerals ⟨⟩ 75—Lessees' payment of rent to bank holding lease in escrow pending clearing of title sufficient to extend lease.**

Where oil and gas lease was deposited with a bank in escrow pending the outcome of a suit brought to clear lessors' title on lessees' objections thereto, lessees' payment of rent to the bank instead of to lessors to extend life of lease on failure to commence drilling operations where title was not cleared until after date before which special payment was to be made *held* to extend the lease, since the amount deposited with the bank became a part of the escrow, and its final disposition subject to the escrow agreement.

2. **Mines and minerals ⟨⟩ 81—Lessors' grantee held not entitled to complain that rent to extend lease was deposited with bank in which lease was deposited in escrow pending clearing of lessor's title.**

Where oil and gas lease was deposited with a bank in escrow pending the outcome of a suit to clear lessors' title brought by attorney representing all of the parties, lessors' grantee, who purchased with knowledge thereof, could not complain that the amount lessees were required to pay before certain date to extend life of lease was deposited with the bank and not paid to such grantee as lessors' successor, where the title was not cleared until after date before which such payment was to be made.

3. *Mines and minerals ⟨⟩ 81—Lessees suing lessors' grantee for wrongful execution of subsequent lease to innocent purchaser not required to tender performance of lease in view of invalidity.*

Where oil and gas lease was placed in escrow pending clearing of lessors' title and pending the suit brought for such purpose lessors conveyed a part of the land to a third party who with knowledge of prior lease executed a lease to an innocent purchaser, the lessees under the first lease could recover damages against such third party for wrongful execution of the subsequent lease by proving that the title would have been cleared by the suit, and that on the determination of the suit they would have been willing to accept the title and would have been able and willing to comply with all the necessary requirements of the lease without making a further tender on their part of compliance with the lease; such further tender having been rendered unnecessary by execution of subsequent lease to innocent, purchaser rendering first lease invalid.

Error to Court of Civil Appeals of Eighth Supreme Judicial District.

Suit by J. H. Erwin and others against A. J. Olsen and another. Judgment for plaintiffs against named defendant was reversed, and the cause was remanded by the Court of Civil Appeals (229 S. W. 878), and plaintiffs bring error. Judgment of Court of Civil Appeals reversed, and that of district court affirmed.

Dallas Scarborough, of Abilene, for plaintiffs in error.

B. W. Patterson, of Cisco, for defendants in error.

McCLENDON, P. J. The plaintiffs in this suit (Erwin and others), who were the assignees of the lessee (Clements) in an oil lease which was in escrow pending curing certain defects in the title to the land covered by the lease, brought this suit against a subsequent lessee (Harris) under an oil lease executed by a vendee (Olsen) of part of the land from plaintiffs' lessors (Brandon and wife) for the purpose of canceling the Harris lease, and in· the alternative against Olsen for damages for having wrongfully executed lease to Harris, an innocent purchaser, thereby destroying the value of plaintiffs' lease. The trial was without a jury, resulting in a judgment in favor of Harris, holding his lease valid on the ground that he was an innocent purchaser, and against Olsen for the value of plaintiffs' lease to the extent that it covered the Olsen land. The case was carried to the Court of Civil Appeals upon writ of error by Olsen alone. That court reversed the case, and rendered judgment for Olsen, holding, in effect, that plaintiffs' lease was rendered void by failure to pay a certain stipulated sum as rental which accrued during the time the lease was in escrow. 229 S. W. 878. The correctness of this holding presents the only important question for determination in this court.

The material facts in the case follow: On February 14, 1918, T. E. Brandon and wife signed and acknowledged a standard form oil lease in favor of W. P. Clements, covering a 201-acre tract of land then owned by the grantors. The consideration for the lease was $2 per acre, and it was provided that, if drilling operations were not com-

menced on or before February 14, 1919, the lease should terminate, unless the lessee should pay to the lessors on or before that date $201, in which event the lease should be extended another 12 months. This lease and a check for the initial $2 per acre were placed in escrow with a bank at Putnam, Tex., the lease to be delivered to Clements and the check to the Brandons upon approval of the title by Clements' attorney. On March 7, 1918, Clements executed an assignment of this lease to plaintiffs Hartman & Son (with whom the other plaintiffs were jointly interested), which assignment was also placed in escrow with the Putnam bank to be delivered along with the original lease when the title should be approved. Abstract of title was placed in the hands of Judge Scott, who acted as attorney for plaintiffs in examining it. Judge Scott was unwilling to approve the title unless suit were brought against certain parties who had executed deeds to the land, and as to whose majority at the date their deeds were executed there appeared to be some question. Judge Russell was employed to bring this suit under an arrangement by which the expense was to be divided equally between Clements and the Brandons. On July 23, 1918, a trade was made between the Brandons and A. J. Olsen whereby the former agreed to trade to the latter about 90 acres of the land covered by the Clements lease, the Brandons to receive certain property of Olsen and $250 cash difference. A deed was signed and acknowledged by the Brandons conveying to Olsen the 90-acre tract, which deed, together with a deed from Olsen to the Brandons, was also placed in escrow in the Putnam bank to be delivered upon approval of the respective titles. The deed to Olsen was a general warranty, and made no exception of mineral rights and no reference to the Clements lease; but there was evidence warranting a finding that Olsen knew of the Clements lease at the time these deeds were placed in escrow, and took subject thereto. T. E. Brandon died on November 9, 1918. The trade between the Brandons and Olsen was consummated and deeds delivered on December 27, 1918. At that time the question of the Clements lease was discussed, and Olsen was advised that Russell was to bring suit to clear the title of the defects pointed out by Judge Scott, to which arrangements Olsen then assented. Olsen was willing to accept the title to the 90 acres deeded to him and waived the objections of Judge Scott upon being furnished certain affidavits. It appears that the district court in Callahan county met only every six months, and Russell lost one term of court on account of having to make a trip to California. But, since he represented both the lessors and the lessee in clearing the title, no question was raised by Mrs. Brandon as to this delay. Plaintiffs deposited with the Putnam bank prior to February 14, 1919, the rentals accruing on that date. The suit to clear title was later brought and title accepted by plaintiffs on June 24, 1919, on which date $90 of the rental on deposit with the bank was passed to the credit of Olsen, who declined to accept it. In the meantime, on February 25, 1919, Olsen executed an oil lease covering the 90 acres to R. S. Harris, who had no notice of the Clements lease.

[1] The decision of the Court of Civil Appeals is rested upon the proposition that, the evidence showing no waiver of payment to Mrs. Brandon or Olsen on or before February 14, 1919, of the amount required to extend the lease beyond that date, and there having been no commencement of drilling operations by that time, the lease was automatically terminated. This proposition might be correct if the Clements lease had been delivered on or prior to February 14, 1919. But so long as that lease was in escrow there was clearly no obligation on the part of Clements or his assigns to make any payment whatever to Mrs. Brandon or Olsen. A tender to them would necessarily be conditional and a useless thing until the time arrived when Clements and his assigns were willing or bound to accept the title or forfeit their rights to have the lease delivered them by the bank under the escrow arrangement. Until that time arrived neither Mrs. Brandon nor Olsen was entitled to the original consideration for the lease deposited with the bank, or to any subsequent amounts which might become payable thereunder.

[2, 3] By depositing the amount with the bank, it became a part of the escrow, and its final disposition subject to the escrow agreement. Plaintiffs had done all that was required of them when they made this deposit. Failure to pay or tender to Mrs. Brandon or Olsen the rental stipulated for on or before February 14, 1919, would therefore have no effect whatever upon the validity of the lease, which was on that date still in escrow. Olsen having closed the trade for his 90 acres with full knowledge of the arrangement by which Russell was to represent all interests in clearing the title, he was in no position to complain, and, so far as the record shows, made no complaint of any laches on Russell's part in bringing the suit. His action on February 25, 1919, in making the lease to Harris, an innocent purchaser, effectually destroyed the Clements lease to the extent of the Olsen land, and fixed the rights of Clements' assigns as against Olsen, subject to approval of the title by the former. Between the time Olsen accepted the deed from Mrs. Brandon on December 27, 1918, and the execution by Olsen of the Harris lease there had not been an opportunity to clear the title by suit. The action of Olsen in executing that lease rendered impossible the carrying out of the es-

crow agreement as to the Clements lease, in so far as the Olsen land was concerned, and rendered unnecessary any further action on the part of Clements and his assigns toward clearing the title to the 90 acres. It was then only necessary for the holders of the Clements lease to show, in so far as Olsen was concerned, that the title would have been cleared by suit as contemplated, and that they would have been willing to accept it and able and willing to comply with all necessary requirements. Any further tender on their part to Olsen was rendered unnecessary by the action of the latter in making the lease to Harris. We are of the view, therefore, that the Court of Civil Appeals erroneously held that the Clements lease was voided by failure to pay or tender to Olsen or Mrs. Brandon the rentals accruing on or before February 14, 1919.

There are several other assignments of error urged by Olsen in the Court of Civil Appeals, all of which were considered and overruled by that court. We have examined these assignments, and are of the view that they are without merit.

We therefore conclude that the judgment of the Court of Civil Appeals should be reversed, and that of the district court affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.